IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERIKA GUTIERREZ and
DELLA DUTCHOVER,

     Plaintiffs,

v.                                    No.

SHARKNINJA OPERATING, LLC,

     Defendant.

## **COMPLAINT**

Plaintiffs Erika Gutierrez and Della Dutchover ("Plaintiffs") by and through their undersigned counsel, Egolf + Ferlic + Martinez, LLC (Kate Ferlic, Brian Egolf, and Ben Osborn, appearing), hereby submit the following Complaint and Demand for Jury Trial against Defendant SharkNinja Operating, LLC ("Defendant SharkNinja" or "Defendant").

## **JURISDICTION AND VENUE**

1. Plaintiffs, at all relevant times, are residents of Hondo, New Mexico.

2. The incident giving rise to the below claims occurred in Hondo, New Mexico.

3. The sale of the subject SharkNinja blender occurred in Ruidoso, New Mexico.

4. Defendant SharkNinja Operating, LLC is a Massachusetts limited liability corporation incorporated in the Cayman Islands and has a principal place of business located at 89 A St., Needham, MA 02494.

5. Defendant SharkNinja is a resident and citizen of the State of Massachusetts for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

6.      Defendant transacts business within the State of New Mexico. Upon information and belief, Defendant has agreements with distributors and retailers within New Mexico for distribution, marketing, promotion and sale of blenders (including the subject blender) along with other similar products in New Mexico and is thereby transacting business within this state. Upon information and belief, Defendant derives substantial revenue from goods sold and used in New Mexico, regularly does or solicits business in New Mexico, and has caused an injury within New Mexico. This Court has personal jurisdiction over Defendant pursuant to N.M. Stat. Ann. Section 38-1-16(A) (1971).

7.      Defendant purposefully directed its activities at residents of New Mexico by designing, manufacturing, marketing, promoting, distributing, and selling blenders (including the subject blender) along with other similar products within the state of New Mexico. Upon information and belief, Defendant shipped, or participated in shipping, the subject blender, whose defective design caused Plaintiffs' injuries, with reasonable expectation that it could or would find its way to New Mexico through the stream of commerce. Its business is affected by blenders and other products sold in New Mexico. Defendant's actions in designing, manufacturing, marketing, distributing, and selling blenders (including the subject blender) and other products directly and/or by and through sales agreements should have led it to reasonably anticipate being subject to the jurisdiction of New Mexico's courts. Defendant's acts manifested an intention to submit to and be protected by the laws of New Mexico. In short, Defendant purposefully availed itself of the privilege of conducting activities in this state through repeated contacts and transactions within this state, and this suit is based on injuries arising from those contacts.

8.      This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of New Mexico and intentionally availed itself of the markets within New Mexico through the promotion, sale, marketing, and distribution of its products.

## FACTS COMMON TO ALL CLAIMS

### THE EXPLOSION AND INJURIES TO THE PLAINTIFFS

10.     On January 1, 2025, Plaintiff Gutierrez and her mother, Plaintiff Dutchover, were making red chile sauce in Plaintiff Dutchover's kitchen.

11.     This was an activity that Plaintiffs had performed together countless times over multiple decades. The process and recipe for Plaintiffs' red chile sauce remained unchanged for all those years.

12.     Plaintiff Dutchover purchased the blender at Walmart in Ruidoso, New Mexico on around November 2024.

13.     To make the chile sauce, Plaintiffs placed softened chile pods into Defendant's 16oz Ninja SS151 TWISTi Blender DUO ("Ninja TWISTi Blender") cup and securely attached it to the motor base.

14.     Plaintiffs began to blend and puree the chile pods in the blender cup until they were a smooth texture.

15.     When the desired consistency was reached, Plaintiff Dutchover removed the cup from the blender and began to unscrew the lid from the cup.

16.     As Plaintiffs began to unscrew the lid, the pureed chile exploded out of the Ninja TWISTi Blender blender cup, without warning or immediately evident cause.

17.     The explosion from the blender cup was so forceful that the scalding chile was spewed onto Plaintiffs, over all the kitchen surfaces, the kitchen ceiling, and as far as multiple yards away into the hallway adjacent to the kitchen.

18.     Plaintiff Gutierrez screamed when the chile hit her face and felt significant burning pain.

19.     Soon after the chile hit her, her skin began to peel off her face. Plaintiff Gutierrez began to panic, frightened that this was no ordinary heat or spice burn and still shocked that a result so unexpected could happen during an activity so familiar.

20.     At the same time as the blender explosion, Plaintiff Gutierrez's brother, Kevin Torrez, was walking in through the front door of Plaintiff Dutchover's home.

21.     Mr. Torrez heard his sister scream and ran into the kitchen for the immediate aftermath of the incident. Mr. Torrez immediately went to Plaintiff Dutchover, his mother, and began tending to the severe burns developing on her arm, already obvious to Mr. Torrez' observation.

22.     Mr. Torrez determined that both Plaintiff Gutierrez and Plaintiff Dutchover's injuries needed immediate medical attention. He drove both Plaintiff Gutierrez and Plaintiff Dutchover to the emergency room at Lincoln County Medical Center ("E.R.") in Ruidoso, New Mexico.

23.    Plaintiff Gutierrez and Plaintiff Dutchover each experienced unyielding and excruciating pain from their burns in the ride to the E.R.

24.    Once at the E.R., Plaintiff Gutierrez and Plaintiff Dutchover received care and pain management from doctors, who concluded that Plaintiffs' injuries urgently required more specialized treatment.  Each Plaintiff was individually transported by emergency medical flight to a hospital in Lubbock, Texas. The hospital in Lubbock had a burn specialty unit that could properly care for their wounds.

25.    Plaintiffs spent the night at the hospital before returning home the next day.

26.    Over the following weeks, Plaintiff Dutchover needed extensive and continuous assistance to tend her wounds and perform basic tasks.

27.    Plaintiff Dutchover's injuries greatly impacted and impaired her life. She needed assistance to perform basic self-care tasks such as brushing her hair and teeth and bathing. She was unable to perform basic household chores and was unable to tend to or hold her small grandchildren and other loved ones.

28.    Plaintiff Dutchover's face and arm are now permanently and significantly scarred. She has also suffered painful and life-threatening blood clots as a result of the burn wounds.

29.    In the weeks following the accident, Plaintiff Gutierrez suffered from continuous pain in her face. She was unable to open or see out of one of her eyes because of the burns on the upper eyelids. As the burn wounds slowly healed, Plaintiff Gutierrez felt incessant itching and discomfort, causing many sleepless nights and interfering with her quality of life and work.

30. Just to avoid having her wounds infected, Plaintiff Gutierrez was unable to work for a period following the accident. Her slow recovery continued to hinder her work and all aspects of her life long afterwards.

31. Each Plaintiff has permanent scars, disfigurement, and injuries from the blender explosion. Each Plaintiff also continues to suffer from painful sensitivity to heat around their burns.

THE DESIGN OF THE NINJA TWISTi BLENDER

32. Defendant designs, manufactures, markets, imports, distributes and sells consumer products such as blenders, which specifically includes the Ninja TWISTi Blender used by Plaintiffs in this case.

33. When they were injured, Plaintiffs were using the Ninja TWISTi Blender in accordance and consistently with the uses and purposes for which Defendant designs, manufactures, imports, distributes, sells, and markets the Ninja TWISTi Blender.

34. Defendant's Ninja blenders are defectively designed and manufactured.

35. Among other risks, Defendant's Ninja blenders' regular and intended use often causes a dangerous and unsuitable heating of the blenders' contents.

36. To wit, the blenders' extremely fast-moving blades heat the contents of the sealed bullet-shaped canister, which can (and does) unexpectedly explode when being used in its normal and intended manner by consumers. Said explosions are a direct, natural, and foreseeable result of the blenders' rapid heating and increased pressure. The risk of said explosions is further increased and directly caused by the absence of any mechanism to release or abate pressure, or to reduce or mitigate temperature increases to the food and liquid being blended.

37.     Consumers use the Ninja blenders without knowledge of the inherent risks of using a Ninja blender.

38.     In a short amount of time, the fast-spinning blades often unexpectedly heat up its contents to a temperature capable of causing serious burns and injuries requiring medical attention.

39.     The unexpected but significant increase in temperature also increases pressure within the sealed canister, which can cause and has caused the dangerously hot contents to explode.  The Ninja blenders pose a safety risk to consumers, and even to anyone in close proximity to the Ninja blenders when they are in use.

40.     The Ninja blenders have been the subject of numerous lawsuits around the nation for similar experiences and injuries as those suffered by the Plaintiffs in this case.

41.     Defendant had actual or constructive notice of the defects and breaches described herein for the Ninja TWISTi Blender based on prior consumer complaints, lawsuits, and knowledge of the risks inherent in the design of the product.

42.     Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell its Ninja TWISTi Blender to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective Ninja blenders, including the Ninja TWISTi Blender, despite the risk of significant injuries to consumers like the Plaintiffs in this case.

43.     Defendant ignored and/or concealed its knowledge of these defects in its Ninja blenders, including the Ninja TWISTi Blender, from the Plaintiff, as well as the public in general, in order to continue profiting from said Ninja blenders, demonstrating a callous,

7

reckless, willful, depraved indifference to the health, safety and welfare of Plaintiffs and consumers like them.

44.   As a direct and proximate result of Defendant's conduct, Plaintiffs incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

45.   Plaintiffs suffered serious and substantial burn injuries as the direct and proximate result of the Ninja blender's plastic cup explosively separating from the base, allowing its scalding hot contents to be forcefully ejected onto Plaintiffs. The incident occurred as the result of the Ninja Blenders defect(s), which allow the plastic cup of the Ninja blender to pressurize to the point that when the cup was slightly loosened from the base of the Ninja blender, the hot contents of the cup exploded.

46.   Additionally, the incident occurred as the result of Defendant's failure to warn and to redesign the Ninja blender, despite the existence of economical, safer alternative designs.

**COUNT I:**
**STRICT LIABILITY**

47.   Plaintiffs incorporate by reference the foregoing allegations.

48.   Defendant manufactured, designed, assembled, distributed, tested, inspected, and sold the Ninja TWISTi Blenders, including the blender that injured Plaintiffs.

49.   Defendant manufactured, designed, assembled, distributed, tested, inspected, and sold the Ninja TWISTi Blenders with actual or constructive knowledge that they would be purchased and used by members of the general public, such as Plaintiffs.

50. At the time the subject blenders were distributed and/or sold by Defendant, the Ninja TWISTi Blender were defective in their design, manufacture, and/or warnings.

51. The subject Ninja TWISTi Blender was expected to and did reach Plaintiffs without undergoing any substantial changes or alterations to the condition in which Defendant manufactured it.

52. At the time of Plaintiffs' injuries, the blender Defendant had sold to the Plaintiffs was in the same or substantially similar condition as when it left the possession of the Defendant.

53. Plaintiff did not misuse or materially alter the blender.

54. At the time of Plaintiff's injuries, Defendant's blenders were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiffs.

55. At the time they were produced and distributed by Defendant, the subject blenders were defective in their manufacture and/or design, for the following reasons:

a. The subject blenders deviated from their design specifications, formulas, and/or performance standards;

b. The subject blenders were designed and manufactured without sufficient internal temperature control or insulation;

c. The subject blenders were designed and manufactured without sufficient friction reduction;

d. The subject blenders failed to incorporate safety devices against overheating and over-pressurizing;

9

e.      The subject blenders were designed, manufactured, and/or fabricated with materials that failed to resist and/or magnified the ordinary pressure stress, thermal stress, and fatigue stress reasonably anticipated;

f.      The subject blenders were designed, manufactured, and/or fabricated using materials that caused or contributed to excessive friction, head, and pressure build up;

g.      The subject blenders were designed and sold without undergoing adequate testing, analysis, surveys or assessments to identify the unreasonable dangers described herein;

h.      The subject blenders were designed in a manner such that they exposed individuals who purchased and used the product, including Plaintiffs, to unreasonable risks of harm during foreseeable uses of the product, including the risks of explosion and/or burns from heat or contents; and

i.      In such other particulars as the evidence may show.

56.     Specifically, but not limited to, the design failed to incorporate a pressure release mechanism to prevent explosive discharge of heated contents when the lid is removed.

57.     Additionally, at the time produced and distributed by Defendant, the TWISTi Blender was defective in manufacturing and / or design, including but not limited to a lack of sufficient internal temperature control or insulation, lack of friction reduction, failure to incorporate safety devices against overheating and over-pressurizing, and the use of materials that caused or contributed to excessive heat or pressure build up.

58.     The Plaintiffs' blender did not perform as safely or in the manner that an ordinary consumer would have expected it to perform.

10

59. The manner of the Plaintiffs' use of their Ninja blender was foreseeable and intended by the Defendant.

60. Under the laws of the State of New Mexico, Defendant is strictly liable to Plaintiffs as the subject blenders were defective and unreasonably dangerous due to inadequate warnings and/or instruction s for use because, *inter alia*:

    a. Defendant knew, or in the exercise of reasonable care should have known, that there was a significant risk of heating, explosion, and burn injuries associated with the foreseeable and/or intended use of the subject blenders but failed to provide adequate warnings, labels or instructions related to that risk;

    b. Defendant knew, or in the exercise of reasonable care should have known, that the subject blenders were designed in a manner such that they failed to resist and/or magnified the ordinary pressure stress and thermal stress, but failed to provide adequate warnings, labels or instructions related to that risk;

    c. Defendant knew, or in the exercise of reasonable care should have known, that the subject blenders were designed in a manner such that they could cause or contribute to cause an excessive thermal and pressure build up, and were prone to explosions or other dangerous pressure release, but failed to provide adequate warnings, labels, or instructions related to those risks; and

    d. In such other particulars as the evidence may show.

61. The Defendant had available to it alternative designs that would have produced a blender with substantially similar functionality and greatly reduced or eliminated risk to the Plaintiffs and the public.

62. The risk of the subject blenders dangerously heating and/or exploding when being used is not an open and obvious risk, nor is it a risk that is a matter of common knowledge.

63. Plaintiffs did not know at the time of their use of the subject blenders, nor at any time prior thereto, of the existence of the defects in Defendant's product.

64. The unreasonable dangers associated with the foreseeable uses of the subject blenders excuse those that the ordinary user or consumer would anticipate, and the risk of harm stemming from their manufacture could have been reduced or avoided entirely had Defendant not deviated from minimum standards.

65. The unreasonable dangers associated with the uses of the subject blenders outweigh their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

66. The unreasonable dangers associated with the uses of the subject blenders outweigh their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided entirely by the incorporation of feasible, alternative designs.

67. The unreasonable dangers associated with the uses of the subject blenders outweigh their utility, and the foreseeable risk of harm regarding their design could have been reduced or avoided had adequate warnings, instructions for use and information been provided with the products.

68. As a direct and proximate result of the above-noted defect(s) of the subject blenders, Defendant's Ninja TWISTi Blender exploded and spattered Plaintiffs with scalding and chemically-burning chile sauce causing injuries to Plaintiffs.

12

69.    As a direct and proximate result of the above-noted defect(s) of the subject blenders, Plaintiffs sustained debilitating injuries, permanent scarring, lost wages, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

70.    Wherefore, Plaintiffs request judgment against Defendant for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief as the Court deems just and appropriate.

## COUNT II: NEGLIGENCE

71.    Plaintiffs incorporate by reference the foregoing allegations.

72.    Defendant had a duty to design, manufacture, market, and sell non-defective blenders that are reasonably safe for their intended uses by consumers, such as Plaintiffs and their family. Defendant also had a duty to adequately warn of dangers posed by a product's design. These duties applied to the subject blender at issue in this case.

73.    Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its blenders in that Defendant knew or should have known that said blenders created a high risk of unreasonable harm to the Plaintiffs and consumers alike.

74.    Defendant was negligent in the design, manufacture, advertising, warning, marketing and sale of its blenders in that, among other things, they:

    a.    Failed to use due care in designing and manufacturing the blenders to avoid the aforementioned risks to individuals;

b.      Placed an unsafe product into the stream of commerce;

c.      Aggressively over-promoted and marketed its blenders through television, social media, and other advertising outlets; and

d.      Were otherwise careless or negligent.

75.     Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the Blenders were still pressurized, Defendants continued to market (and continue to do so) its blenders to the general public.

76.     The Defendant's breach of its duty to the Plaintiffs and caused them harm, as described in this Complaint.

**COUNT III:**
**BREACH OF IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**

77.     Plaintiffs incorporate by reference the foregoing allegations.

78.     Defendant is a merchant with respect to the subject goods at issue, including the TWISTi Blender that injured Plaintiffs, within the meaning of New Mexico law.

79.     Defendant manufactured, supplied, and sold its blenders with an implied warranty that they were fit for the particular purpose of blending quickly, efficiently and safely.

80.     Members of the public, including consumers such as the Plaintiffs, were the intended beneficiaries of the warranty.

81.     Defendant's blenders were not fit for the particular purpose as a safe means of blending, due to the unreasonable risks of bodily injury associated with their use.

82.     The Plaintiffs in this case reasonably relied on Defendant's representations that its blenders were a quick, effective and safe means of blending.

14

83. Plaintiffs made ordinary and foreseeable use of the subject blender and Plaintiffs relied upon the implied warranties given by Defendant.

84. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiffs' injuries and damages.

85. Defendant's acts and omissions as described herein constitute a breach of the implied warranty of fitness for a particular purpose under NMSA 1978, Section 55-2-315 (1961).

**COUNT IV:**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

86. Plaintiffs incorporate by reference the foregoing allegations.

87. At the time Defendant marketed, distributed and sold the Ninja blender to the Plaintiffs in this case, Defendant warranted that the Ninja blender was merchantable and fit for the ordinary purposes for which it was intended.

88. Members of the public, including consumers such as the Plaintiffs, were intended beneficiaries of the warranty.

89. Defendant's Ninja blenders, including the blender that injured Plaintiffs, were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

90. The Plaintiffs in this case and/or their family purchased and used the Ninja blender with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of blending.

91. Defendant's breach of implied warranty of merchantability was a direct and proximate cause of Plaintiffs' injuries and damages.

15

92.     Defendant's acts and omissions described herein constitute breach of an implied warranty of merchantability under NMSA 1978, Section 55-2-314 (1961).

## DAMAGES:

93.     Plaintiffs seek damages from Defendant for past, present, and future medical bills and expenses, and other necessary expenses resulting from their incident-related injuries in amounts to be shown by the evidence adduced at trial.

94.     Plaintiffs seek damages from Defendant for all past, present, and future pain and suffering resulting from their physical injuries, in an amount as determined by the jury.

95.     Plaintiffs seek damages from Defendant for all past, present, and future mental and emotional distress, and pain and suffering resulting from the incident, in amounts to be determined by the jury based upon the evidence adduced at trial.

96.     Plaintiffs seek damages from Defendant for the loss of enjoyment of life, scarring and disfigurement they have suffered and will continue to suffer as a proximate cause of the incident and the injuries sustained therein, in an amount to be determined by the jury based upon the evidence adduced at trial.

## PUNITIVE DAMAGES

97.     Plaintiffs incorporate by reference the foregoing allegations.

98.     Defendant had a duty to refrain from willful and wanton acts, omissions, and/or misconduct that would foreseeably expose Plaintiffs to an unreasonable risk of harm and injury.

99.     Defendant breached its duties and committed one or more of the acts or omissions alleged herein amounting to willful and wanton misconduct, in that Defendant acted with reckless disregard for the health, safety and wellbeing of Plaintiffs and others similarly situated.

16

100.   As a direct and proximate result of one or more of the foregoing willful and wanton acts or omissions, Plaintiffs were exposed to Defendant's defective blender which exploded and caused the injuries and damages described herein.

101.   An award of punitive damages is necessary and appropriate to punish Defendant for its willful, wanton, and/or intentional misconduct and/or reckless disregard for the health, safety, and wellbeing of Plaintiffs and others and to deter Defendant and others similarly situated from engaging in like misconduct in the future.

## JURY DEMAND

102.   Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for damages, including punitive damages, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law. This includes judgment for Plaintiffs and against Defendant, damages to compensate Plaintiffs for their injuries, economic losses, and pain and suffering sustained as a result of the use of the Defendant's blenders, pre and post judgment interest, punitive damages on all applicable Counts as permitted by the law, a trial by jury on all issues of the case, an award of attorneys' fees, and for any other relief as this Court may deem equitable and just.

Respectfully submitted,

EGOLF + FERLIC + MARTINEZ, LLC

*/s/ Kate Ferlic*
Brian Egolf
Kate Ferlic
Ben Osborn

17

123 W. San Francisco St., Second Floor
Santa Fe, NM  87501
(505) 986-9641
Brian@EgolfLaw.com
Kate@EgolfLaw.com
Ben@Egolflaw.com

18